[No. 1986-1.   Division One.   September 17, 1973.]

THE STATE OF WASHINGTON, *Petitioner*, v. CURTIS GENE THORNTON, *Respondent*.

*Christopher T. Bayley, Prosecuting Attorney*, and *Michael P. Ruark, Deputy*, for petitioner.

*R. Stewart Bock*, for respondent.

CALLOW, J.—This matter comes before the court on an application by the state for writ of certiorari to review an

order of the superior court declining to enter a special finding on whether the defendant was armed with a deadly weapon. The defendant was charged by information with robbery and assault in the second degree, while armed with a deadly weapon.

The trial judge found the facts to be as follows: On May 1, 1972, Marilyn Pegg, while shopping at the Renton Shopping Center, observed the defendant walking towards her. She observed him because of his odd walk and watched him until he was approximately 12 feet from her. When she turned to look in a store window, she felt a tug on her right arm, turned and saw the defendant sprawled at her feet with her purse beside him. The defendant then picked himself up and ran with her purse. Miss Pegg followed the defendant yelling for help and for him to stop. A witness, Dale McDowell, was just arriving at the shopping center, and he heard the shouting and saw the defendant running. After a short chase, Mr. McDowell caught the defendant and grabbed his shoulder. The defendant turned showing a silver-plated pistol. McDowell backed up, turned and ran. He then heard a gunshot and the impact of a bullet off to his right.

The trial court further found that another witness observed McDowell and the defendant scuffle. This witness saw the defendant pull a silver- or nickel-plated pistol from his right pocket and point it at Dale McDowell. He saw and heard the defendant shoot the pistol. However, the trial court also found that there was no evidence to establish that the gun was fired at McDowell. This witness then saw the defendant get into an automobile and drive away.

From this evidence, the trial court found the appellant guilty of robbery and assault in the second degree. The court declined to enter a finding "that the defendant was armed with a deadly weapon as defined by RCW 9.95.040, and a firearm pursuant to RCW 9.41.025, . . ."

After a hearing on the motion calendar of this court on December 8, 1972, an order was entered remanding the cause to the superior court for the purpose of holding a

hearing to enter findings of fact as to the reasoning of the trial court's failure to enter a special finding that the defendant was armed with a firearm while committing a crime. This trial court hearing was conducted and on March 5, 1973, supplemental findings of fact were entered by the trial court which recited:

II.

That upon consideration of the facts of the offense as brought out during the trial the court finds that the application of the deadly weapon statute, RCW 9.95.015, which would require the Board of Prison Terms and Paroles to set a minimum term of five-years for Curtis M. Thornton, was not appropriate in this case, that in the interests of justice the Board of Prison Terms and Paroles should be able to exercise its discretion in setting the minimum term for Curtis M. Thornton.

III.

That since the trial court has discretion in applying RCW 9.95.015 in that the statute authorizes but does not require the judge or jury to make a special finding of a deadly weapon, and since the court when sitting as the trier of fact, has the discretion to either accept or reject evidence offered by the prosecution or the defendant, and that such a conclusion as to facts involved in the case is not subject to review upon request of the state, and because of the nature of the evidence presented, a special finding of a deadly weapon should not be made in this case.

RCW 9.95.015 provides:

In every criminal case wherein conviction would require the board of prison terms and paroles to determine the duration of confinement and wherein there has been an allegation and evidence establishing that the accused was armed with a deadly weapon at the time of the commission of the crime, the court shall make a finding of fact of whether or not the accused was armed with a deadly weapon, as defined by RCW 9.95.040, at the time of the commission of the crime, or if a jury trial is had, the jury shall, if it find the defendant guilty, also find a special verdict as to whether or not the defendant was armed with a deadly weapon, as defined in RCW 9.95.040, at the time of the commision of the crime.

RCW 9.95.040 provides in part:

The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence, to wit:

(1) For a person not previously convicted of a felony but armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than five years.

. . .

The words "deadly weapon," as used in this section include, . . . [any] pistol, revolver, or any other firearm, . . .

RCW 9.41.025 states in part:

Any person who shall commit or attempt to commit any felony, . . . while armed with, or in the possession of any firearm, shall upon conviction, in addition to the penalty provided by statute for the crime committed without use or possession of a firearm, be imprisoned as herein provided:

(1) For the first offense the offender shall be guilty of a felony and the court shall impose a sentence of not less than five years, which sentence shall not be suspended or deferred;

■ The trial court recites in its finding of fact that RCW 9.95.015 allows the exercise of discretion in whether or not a finding of fact or a special verdict will be made or returned. We disagree, holding the making of such a finding as a step in the sentencing procedure is a duty now placed upon the courts. The trier of the fact must make the finding or return the verdict if there has been an allegation and evidence establishing that the accused was armed with a deadly weapon at the time of the commission of the crime. The performance of the function is mandatory upon the court.

The legislative history of RCW 9.95.015 was discussed in *State v. Coma*, 69 Wn.2d 177, 417 P.2d 853 (1966). The court reviewed the legislative history of the 1961 amendment of RCW 9.95.015 and set forth the legislative purpose reflected as the preamble of the bill, later enacted into law as chapter 138 of the Laws of 1961, at page 185 as:

*Purpose: To place the determination of the deadly weap-*

> *on issues upon the court or jury where the determination properly belongs since all the evidence can then best be presented and thus relieve the parole board from having to make this judicial determination.*

The court observed in *Coma* that the board is not required to impose the mandatory minimum in the absence of the special finding and, if the purpose above quoted was to be served, should refrain from any determination of the use or nonuse of a deadly weapon. However, the board may still make such a determination on its own initiative. Attorney General Opinion, September 12, 1963.

Whether a defendant was armed with a deadly weapon or not is comparable to the legislative creation of a higher degree of the crime charged. The possession of a deadly weapon at the time of the commission of the crime is sufficient for the imposition of the additional punishment. *State v. Richard,* 4 Wn. App. 415, 482 P.2d 343 (1971). The special verdict which is to be returned or the finding which is to be made under the "deadly weapon" statute relates to the sentencing procedure. *State v. Williams,* 3 Wn. App. 336, 475 P.2d 131 (1970). RCW 9.95.040 and 9.95.015 establish a procedure by which a finding of fact or special verdict that the defendant was armed with a deadly weapon make it mandatory that the board set the minimum term as specified in the statute. *State v. Canady,* 69 Wn.2d 886, 421 P.2d 347 (1966). RCW 9.95.040 is addressed to the board and not the courts. *State v. Slaughter,* 70 Wn.2d 935, 425 P.2d 876 (1967). To intrude into the area of the board is to disturb the legislative scheme and the sentencing procedure.

The statute and the cases which have construed it indicate that whether or not the facts and circumstances justify the deadly weapon charge which will impose the additional penalty is a discretion reposed in the prosecutor and not in the courts. As said in *Canady* at page 891:

> The use of RCW 9.95.015 requires allegation and proof of the carrying of a "deadly weapon," which phrase is clearly defined in RCW 9.95.040. Use of a "deadly

weapon" is not a necessary element of the crime of burglary in the second degree. Thus, the prosecutor's decision to bring into play the procedure of RCW 9.95.015 is not governed solely by his own discretion. The requirements of proof and his ability to meet them are determinative of the decision.

See also *State v. Hines*, 5 Wn. App. 587, 489 P.2d 746 (1971). The prosecution must, of course, establish by the evidence that the accused was armed with a deadly weapon when the crime was committed, and the trier of the fact must ascertain whether the burden of proof has been met. However, once that issue has been submitted, the function must be performed by the judge or jury to assist the board in handling the steps of the sentencing procedure which are its responsibility. *See State v. Rose*, 7 Wn. App. 176, 498 P.2d 897 (1972).

In considering a charge against two defendants where only one weapon was used, *State v. Willis*, 5 Wn. App. 441, 487 P.2d 648 (1971), held that the enhanced penalties of RCW 9.95.040 can be imposed upon both defendants under the statutory definition of "principal." The court said quoting from *State v. Zornes*, 78 Wn.2d 9, 475 P.2d 109 (1970):

> [T]he court seeks to find the legislative intent, and to give effect to the legislative purpose. Courts will not ascribe to the legislature a vain act, and a statute should, if possible, be so construed that no clause, sentence, or word shall be superfluous, void, or insignificant.

Continuing, the *Willis* decision stated at page 445:

> Our robbery statute, while not providing for degrees of robbery, RCW 9.75.010, does provide for enhanced punishment if armed at the time with a deadly weapon. RCW 9.95.015. Other states, rather than having an enhanced punishment statute, provide that a robbery committed with a deadly weapon constitutes robbery in the first degree and upon conviction shall carry more severe punishment.

It has been held that the language of RCW 9.95.040 makes it plain without room for construction, that a defendant who commits a crime while armed with "any fire-

arms" is within the contemplation of the statute and a court cannot decline to enter a special finding on the deadly weapon issue any more than a jury can decline to perform its function by refusing to answer the interrogatory of the special verdict. A trial court is limited within statutory guidelines in the exercise of its discretion in sentencing. *State v. Mims,* 9 Wn. App. 213, 511 P.2d 1383 (1973), held that the denomination of the offense as "armed robbery" outside the charging portion of the information was insufficient to meet the RCW 9.95.015 requirements of an allegation that the defendant committed the crime charged while armed with a deadly weapon and insufficient to meet the requirement of due process that the defendant have notice of the possible punishment. In reaching that conclusion, the court used language pertinent to our inquiry as follows at page 218:

> In *State v. Frazier,* 81 Wn.2d 628, 503 P.2d 1073 (1972), The court examined RCW 9.41.025, which requires a trial court to impose a mandatory minimum sentence, not subject to suspension or deferral, if defendant is found to have been armed with a firearm during the commission of a felony. . . .
>
> Pursuant to RCW 9.41.025, as interpreted in *Frazier,* a trial court is precluded from exercising its "independent judgment" in determining whether to defer or suspend sentence and is required to incarcerate the defendant upon a factual determination made adverse to him. RCW 9.95.040 removes from the Board of Prison Terms and Paroles its discretion in fixing minimum terms in specific instances and requires mandatory minimum terms where deadly weapon use was found by the jury.

(Footnotes omitted.)

*State v. Sorenson,* 6 Wn. App. 269, 492 P.2d 233 (1972), asserted at page 272:

> The command of RCW 9.95.040 is unambiguous. When an information *alleges* "that [an] accused was armed with a *deadly* weapon at the time of the commission of the crime," and there is *evidence* to support the allegation, "the jury *shall,* if it find the defendant guilty, also find" by special verdict whether the accused was armed with a

weapon, and if so, whether the weapon was "deadly" as that term is defined in RCW 9.95.040.

We interpret RCW 9.95.015 and 9.95.040 to *require* the submission of the special interrogatory when the information charges that the accused was armed with a "deadly" weapon . . .

The opinion notes that RCW 9.95.015 is mandatory, and the trial judge must instruct the jury sua sponte concerning the statutes even though not requested to do so. We believe that *State v. Hill*, 76 Wn.2d 557, 458 P.2d 171 (1969); *State v. Slaughter*, *supra*; and *State v. Newman*, 4 Wn. App. 588, 484 P.2d 473 (1971), stand for the proposition that the trial court may resolve that there did not exist a reasonable evidentiary basis on which to decide whether the defendant was armed with a deadly weapon and therefore not submit the special verdict to the jury. The cited cases do not address themselves to whether a trial court can decline to respond to the interrogatory. The quantum of proof problem requiring a judicial evaluation before submission to the jury does not exist upon trial to the court, the trial judge being charged only with whether the evidence established the defendant was armed with a deadly weapon or not.

We conclude that the statutory format contemplates that the courts will perform the function of ascertaining whether a deadly weapon was used in the commission of the crime, relieving the board of this "determination." We also conclude that this function must be performed if there is sufficient evidence to submit the issue to a jury or, if the trial is to a judge. The board is to consider the special verdict or finding on the question when fixing the duration of confinement.

We commend the trial court for its concern about the inappropriateness of imposing the mandatory minimum term upon this defendant. Statutory requirements of absolute sentences may be unjust in their application to specific cases. *See* ABA Standards Relating to Sentencing Alternatives and Procedures, § 3.2 (Approved Draft 1968). The legislature has foreseen the problem and given the board

the opportunity to redetermine and refix the minimum term of any resident of a state correctional institution at any time after consideration of an investigation and report on prospects for rehabilitation. RCW 9.95.052 (Laws of 1972, 1st Ex. Sess., ch. 67, § 1, p. 143). A comparison of the provisions of RCW 9.95.052 with those of the former statute it replaces, RCW 9.95.050 (repealed by Laws of 1972, 1st Ex. Sess., ch. 67, § 2, p. 143), is helpful in recognizing the new approach adopted by the legislature. The limitations of RCW 9.95.040 upon reconsideration and refixing of a minimum sentence present under RCW 9.95.050 are not within the wording of RCW 9.95.052. There now exists only the basis requirements for redetermination and refixing that are described in RCW 9.95.052, subject to the guidelines of the final paragraph of RCW 9.95.040 which reads in part:

> [T]he board may parole an inmate prior to the expiration of a mandatory minimum term, provided such inmate has demonstrated a meritorious effort in rehabilitation and at least four board members concur in such action:

The cause is remanded and the trial court directed to make a finding of fact of whether or not the defendant was armed with a deadly weapon at the time of the commission of the crime.

HOROWITZ and WILLIAMS, JJ., concur.