[No. 3742–II.   Division Two.   March 23, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM ALAN REGAN, *Appellant.*

*Edmund E. Lozier,* for appellant.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

PETRICH, J.—William Alan Regan has appealed his convictions for first degree rape, first degree assault and first degree kidnapping. Defense counsel initially moved to withdraw on the basis that the appeal presented no arguable issues, and the State had moved to dismiss the appeal. *Anders v. California,* 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967); *State v. Theobald,* 78 Wn.2d 184, 470 P.2d 188 (1970). After briefs were filed by the parties, the Washington Supreme Court rendered its decision in *State v. Johnson,* 92 Wn.2d 671, 600 P.2d 1249 (1979). Defense counsel then filed a supplemental brief arguing that defendant's convictions for kidnapping and assault merge into the first degree rape conviction under the rule of

*Johnson.* Counsel pursued this issue forcefully during oral argument but still renewed his motion to withdraw. Since the Supreme Court's decision in *Johnson* raises an issue of possible merit, we deny defense counsel's motion to withdraw as well as the State's motion to dismiss the appeal and have made an independent review of the record. We conclude that under the rule of *Johnson,* defendant's convictions for first degree kidnapping and first degree assault merge into the first degree rape conviction. Therefore, we affirm defendant's conviction for first degree rape but order the dismissal of the assault and kidnapping convictions.

On the morning of June 19, 1978, the victim was driving north on Interstate 5 when she had a flat tire near the Bay Street exit north of downtown Tacoma. After waiting nearly 40 minutes in her car, a man she later identified as defendant stopped at approximately 8:50 a.m. and asked if she needed assistance. The victim said that she did and asked to be driven to a service station. After the victim got into his car, the defendant held a sharp object which appeared to be a knife or long screwdriver to her throat and tied her hands. He drove the victim some distance to the southeast in the direction of Puyallup by back roads to a secluded area near the intersection of 72nd Street and Waller Road. He forced the victim out of the car by threatening to use his weapon, and then threw it to the ground as he made her walk to a wooded area a short distance from the car where he raped her. Following the rape, defendant made the victim return to the car. In the process, he picked up the weapon and placed it on the front seat of the car. He then drove west in the direction of Tacoma through the McKinley Hill district back toward the victim's car. As he approached Bay Street, defendant stopped his car. At this point the victim struggled to get out of the car, but before she could escape defendant started to choke her. After a witness heard the victim's screams and started to come to her aid, defendant drove off and the victim escaped.

The victim reported the attack immediately to witnesses

who called police. An officer arrived at approximately 10:30 a.m. and interviewed the victim. She described the physical appearance of defendant and of his car and reported the vehicle's license number. Police were able to apprehend defendant shortly after noon in Puyallup. Defendant denied that he abducted or raped the victim and contended that he was at a Puyallup restaurant at the critical times. A witness from the restaurant testified, however, that defendant did not arrive at the restaurant until after 10 a.m. Additionally, the State's criminalist testified that seminal stains found on the clothing of the defendant and on other pertinent evidence matched blood groupings belonging to the defendant and the victim.

At the conclusion of the evidence the trial court gave instructions defining the elements of first degree rape, first degree kidnapping and first degree assault. It also gave instructions defining a deadly weapon. The jury returned a verdict of guilty on all three charges and made deadly weapon findings with regard to the assault and kidnapping charges. However, the jury found by special verdict that the defendant was not armed with a deadly weapon when he committed the rape.

In *Johnson,* our Supreme Court noted that by enacting RCW Title 9A the legislature clearly set forth the different degrees of seriousness for crimes by defining specific types of conduct that call for more severe penalties. By removing the need to pyramid the elements of various crimes in order to provide sufficient punishment for more serious crimes, the legislature intended that "punishment for first–degree rape should suffice as punishment for crimes proven in aid of the conviction, which are incidental to and elements of the central crime." *State v. Johnson, supra* at 678. The court observed that the distinct elements contained in the first degree rape statute which was in effect at the time of this offense all involve the commission of an act defined elsewhere in the criminal code as a

felony.[1] Under the holding of *Johnson,* the State may not obtain a conviction for another felony in addition to a conviction for first degree rape unless it involves some injury to the victim which is separate and distinct from, and not merely incidental to, the crime of first degree rape. *State v. Johnson, supra* at 680. If the defendant could not be convicted for the additional felony without the proof of the rape, the convictions for the additional felony must merge into the conviction for first degree rape. *State v. Johnson, supra* at 681.

The State argues that the rule of *Johnson* does not require a merger in the present case because, unlike *Johnson,* the time and distance factors in the present case clearly show that three separate crimes were perpetrated upon the victim. In view of the manner that the defendant was charged and the way that the jury instructions were phrased, we cannot agree.

The trial court's instructions defining the elements of first degree rape paraphrased relevant sections of RCW 9.79.170(1), the first degree rape statute in effect at the time of trial. These instructions informed the jury that it could convict defendant of first degree rape if it found that he had sexual intercourse with the victim by forcible compulsion and that he threatened to use a deadly weapon *or* kidnapped the victim.[2] The instructions setting forth the elements of first degree kidnapping and first degree assault also contain overlapping references to the first degree rape

---

[1]RCW 9.79.170(1) (now codified as RCW 9A.44.040), the statute defining the elements of first degree rape, provides in pertinent part:

"A person is guilty of rape in the first degree when such person engages in sexual intercourse with another person not married to the perpetrator by forcible compulsion where the perpetrator or an accessory:

"(a) Uses or threatens to use a deadly weapon; or

"(b) Kidnaps the victim; or

"(c) Inflicts serious physical injury; or

"(d) Feloniously enters into the building or vehicle where the victim is situated."

[2]The trial court's instructions on the elements of first degree rape read as follows:

charge. The kidnapping instructions state that the jury could find defendant guilty of first degree kidnapping if it found that he intentionally abducted the victim with the intent to facilitate the commission of rape *or* to inflict bodily injury.[3] Similarly, the elements of first degree rape overlap in the first degree assault instructions which state that the jury may find defendant guilty of first degree assault if it found that he assaulted the victim with a firearm, deadly weapon or force likely to produce death *with the intent to*

"To convict the Defendant of the crime of rape in the first degree as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:

"(1) That on or about the 19th day of June, 1978, the Defendant engaged in sexual intercourse with [the victim];

"(2) That [the victim] was not married to the Defendant;

"(3) That the sexual intercourse was by forcible compulsion;

"(4) That the Defendant . . . used or threatened to use a deadly weapon *or kidnapped the victim*;

"(5) That the acts occurred in Pierce County, Washington.

"A person commits the crime of rape in the first degree when that person engages in sexual intercourse with another person not married to the perpetrator, by forcible compulsion where the perpetrator or an accomplice uses or threatens to use a deadly weapon *or kidnaps the victim*." (Italics ours.)

[3]The trial court's instructions on first degree kidnapping provide in pertinent part:

"To convict the Defendant of the crime of kidnapping in the first degree as charged in Count II each of the following elements of the crime must be proved beyond a reasonable doubt:

"(1) That on or about the 19th day of June, 1978, the Defendant intentionally abducted another person;

"(2) That the Defendant restrained that person by secreting or holding the person in a place where that person was not likely to be found or using or threatening to use deadly force;

"(3) That the Defendant *abducted that person with intent to facilitate the commission of rape* or flight thereafter or with intent to inflict bodily injury upon the victim; and,

"(4) That the acts occurred in Pierce County, Washington.

". . .

"A person commits the crime of kidnapping in the first degree when he or she *intentionally abducts another person with intent to facilitate the commission of rape* or flight thereafter or with intent to inflict bodily injury on the person." (Italics ours.)

*commit rape.*[4]

In view of the wording of these instructions we find that it is impossible to determine whether the jury could have found defendant guilty of the additional felonies of first degree kidnapping and first degree assault without proof of the first degree rape charge. Under the instructions given, the jury was asked to find defendant guilty of two additional felonies which were incidental to and intricately tied to the commission of the first degree rape. Therefore, under the rule of *State v. Johnson,* 92 Wn.2d 671, 600 P.2d 1249 (1979), we hold that the first degree kidnapping and first degree assault convictions merge into defendant's conviction for first degree rape. *State v. Ingham,* 26 Wn. App. 45, 612 P.2d 801 (1980).

We also hold that the merger of the kidnapping and assault convictions requires the vacation of the deadly weapon findings entered pursuant to RCW 9.95.015 in regard to the kidnapping and assault charges. In view of the result reached, preservation of the deadly weapon findings would clearly go against the specific finding of the jury that defendant was not armed with a deadly weapon when he committed the rape.

Defendant has raised 4 other issues in his brief concerning the admission of evidence and statements made during

---

[4]The trial court's instructions on first degree assault provide in pertinent part:

"To convict the Defendant of the crime of assault in the first degree as charged in Count III, each of the following elements of the crime must be proved beyond a reasonable doubt:

"(1) That on or about the 19th day of June, 1978, the Defendant assaulted [the victim];

"(2) That the assault was committed with a firearm, deadly weapon, or by a force or means likely to produce death;

"(3) *That the Defendant acted with intent to commit rape upon the person or property of the person assaulted*; and,

"(4) That the acts occurred in Pierce County, Washington.

". . .

"A person commits the crime of assault in the first degree when, *with the intent to commit a felony upon the person or property of another,* he or she assaults another with a firearm or any deadly weapon or by any force or means likely to produce death." (Italics ours.)

the course of the trial by the trial court and by the prosecuting attorney. We have considered these assignments of error and conclude that they have no merit. Defendant's pro se brief raises 10 other issues which are either discussed above or are totally without merit.

Defense counsel's motion to withdraw and the State's motion to dismiss the appeal are each denied. We affirm defendant's conviction for first degree rape and remand the cause with directions to strike the convictions for kidnapping and assault and to strike the deadly weapon findings.

PEARSON, J., concurs.

REED, C.J. (concurring in part, dissenting in part)—I must respectfully dissent, insofar as the majority finds it necessary to vacate the special "deadly weapon" finding. My reasoning is as follows:

*Query*: When the court merges convictions for crimes statutorily defined as elements of another crime charged with them, and thus must strike the merged convictions, must the court also strike special verdicts finding that the constituent crimes were committed with a deadly weapon?

*Answer*: No.

*State v. Johnson,* 92 Wn.2d 671, 600 P.2d 1249 (1979), holds that where the evidence justifies a conviction for the incidental crime or crimes making up a central crime as well as for the central crime, the jury may only convict of the central crime. There is nothing in *Johnson* or in this record, however, that requires us to strike the special verdicts finding that defendant was armed with a deadly weapon while assaulting and kidnapping the victim.

[T]o obtain a conviction under RCW 9.79.170,[5] the prosecutor must prove not only that the defendant committed rape, but that the rape was accompanied by [at least one] . . . act which is defined as a separate crime elsewhere in the criminal statutes.

---

[5]Recodified as RCW 9A.44.040. Laws of 1979, 1st Ex. Sess., ch. 244, § 1.

*State v. Johnson, supra* at 675. In other words, to convict defendant Regan of the "central crime" (first degree rape), the jury had to find beyond a reasonable doubt that he had committed each of the elements of that crime, including, by extension, the elements of the "incidental" or constituent crime or crimes (assault and/or kidnapping). *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970); *State v. Roberts,* 88 Wn.2d 337, 340, 562 P.2d 1259 (1977). *Johnson* does not require that we strike this jury's implicit (and unchallenged) findings that Regan committed the elements of the constituent crimes. Under *Johnson* we only need strike the convictions themselves. In fact, if these underlying findings were to be stricken along with the convictions, then the first degree rape conviction would also fall. Clearly then, because the underlying factual determinations must remain in the case, the deadly weapon special verdicts should survive. The only error in the judgment below lies in the multiple convictions. There is no error in any of the underlying findings of fact, whether found directly through special verdicts or indirectly through the guilty verdicts on each crime.

Nor does the jury's finding Regan was not armed with a deadly weapon when he actually had intercourse with the victim compel us to vacate the deadly weapon findings involving the merged crimes. This jury had no instruction indicating it was to convict of only one crime, not three. Under *Johnson,* the assault and kidnapping become mere elements of a central crime, no longer crimes in themselves. Therefore, the time span covered by the central crime must extend to include the activities involving these elements, including the use of a deadly weapon. There is nothing in the jury's finding of nonuse of a deadly weapon during the intercourse element of Regan's crime to negate their finding he was armed when he committed the other elements. Just as we do not vacate the factual determination underlying the convictions we here vacate, so also we may not vacate the factual determinations expressed in the special verdicts.

There is another reason the court should not vacate the

deadly weapon findings. Our legislature has classified crimes involving a deadly weapon as more serious than those where no weapon is used.[6] Recognizing the special danger of deadly weapons, the legislature has also passed several "aggravating penalty" statutes.[7] These statutes enhance the punishment of a defendant who commits a crime while armed with an instrument which the legislature has determined increases or aggravates that crime's danger to society. *State v. Workman,* 90 Wn.2d 443, 453, 584 P.2d 382 (1978). It seems unlikely the legislature intends us to frustrate the policy behind its determination by negating a special finding merely because the crimes invoking the findings are incidental to and merge into a central crime. In construing the "aggravating penalty" statutes, our courts have consistently insisted that these special findings must be made when the evidence supports them. *State v. Thompson,* 88 Wn.2d 60, 63, 558 P.2d 245 (1977); *State v. Pierre,* 20 Wn. App. 239, 241, 580 P.2d 648 (1978); *accord, State v. Workman, supra* at 456. The evidence in this case clearly supports the special findings entered by the jury. We therefore may not frustrate the policy which prompted the legislature to require these findings by vacating them.

I would affirm the conviction for first degree rape and

---

[6]*Compare* RCW 9A.56.210 (second degree robbery) *with* RCW 9A.56.200 (first degree robbery).

[7]"RCW 9.95.015 Finding of fact or special verdict establishing defendant armed with deadly weapon. In every criminal case wherein conviction would require the board of prison terms and paroles to determine the duration of confinement and wherein there has been an allegation and evidence establishing that the accused was armed with a deadly weapon at the time of the commission of the crime, the court *shall make* a finding of fact of whether or not the accused was armed with a deadly weapon, as defined by RCW 9.95.040, at the time of the commission of the crime, or if a jury trial is had, the *jury shall,* if it find the defendant guilty, also find a special verdict as to whether or not the defendant was armed with a deadly weapon, as defined in RCW 9.95.040, at the time of the commission of the crime." (Italics mine.)

*See also* RCW 9.95.040 (special finding: mandatory minimum prison term); RCW 9.41.025 (special finding for firearms).

leave undisturbed the "deadly weapon" finding.

Reconsideration denied May 8, 1981.

Review denied by Supreme Court October 16, 1981.