IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35828-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JARED STEVEN LEE, | ) | UNPUBLISHED OPINION |
| aka TANK, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Jared Lee appeals from convictions for first degree robbery, attempted first degree robbery, and first degree unlawful possession of a firearm, arguing that the evidence was insufficient, his counsel was ineffective, and that there were sentencing errors. We affirm.

FACTS

The noted charges arose from the attempted purchase of a BMW automobile that was advertised on-line. Roger Salazar was interested in purchasing the BMW and agreed to pay $3,000 for the vehicle. He arranged to meet the seller in a grocery store parking lot.

Esteban Salazar, Roger's father, accompanied him to the would-be purchase location. Roger drove the car and Esteban sat in the passenger seat. Roger brought

$3,000 with him that he had placed in his wallet by the gearshift. When they pulled into the parking lot, Jared Lee came over and asked the men if they were there to purchase the BMW. When they answered affirmatively, Lee explained that the car was on the other side of the parking lot and asked for a ride over to the location. Roger Salazar agreed.

Lee was in the back seat and the car was in motion when he pulled a gun, pointed it at the head of Esteban Salazar, and demanded the $3,000. Roger stopped the car and told him they did not have the money with them, but that his brother had the money. Esteban gave $12 from his wallet to Lee and said that was all they had. Lee, not dissuaded, took the money and continued to demand the $3,000. He repositioned his gun and pointed it at Roger.

Esteban claimed to see his brother and, while Lee was distracted, grabbed the gun and the two men struggled to possess the weapon. Roger got out of the car, opened the back door, and pulled Lee out. Lee released the gun and Esteban took control of it. Lee ran off and Roger pursued him, catching and pulling Lee by the shirt. Esteban caught up to the two younger men. When Lee continued to try to escape, Esteban hit him on the head with the gun. The Salazars asked store employees to call the police. Law enforcement responded and took Lee into custody.

The prosecutor charged Lee with one count of first degree robbery of Esteban Salazar, one count of attempted first degree robbery of Roger Salazar, and one count of

2

first degree unlawful possession of a firearm. The two robbery charges also carried firearm enhancement allegations.

DNA testing of the firearm concluded that the blood on the gun came from Lee, and that Lee was the major contributor to the DNA on the handle of the weapon, although at least two others contributed to that DNA. A cell phone and hat found in the back seat of the Salazar vehicle did not belong to either of the Salazars. The $12 was never recovered. Police took photographs of $3,200 in Roger Salazar's wallet and returned the money to him.

No evidence was presented at trial by the defense. The jury convicted Mr. Lee on all three charges, and also found that both robberies were committed while he was armed with a firearm. The court imposed standard range prison terms on all counts.

Mr. Lee then timely appealed to this court. A panel considered his appeal without hearing argument.

## ANALYSIS

Mr. Lee's appeal raises six issues, which we regroup by subject matter into three claims. In order, we will address the sufficiency of the evidence, severance, and the offender score calculation. We will then turn to Mr. Lee's pro se statement of additional grounds (SAG).

*Sufficiency of the Evidence*

The appeal challenges the sufficiency of the evidence of the first degree robbery count, the unlawful possession of a firearm count, and the firearm enhancements. The evidence allowed the jury to return the verdicts it did.

These challenges are governed by long settled law. Appellate courts assess such challenges to see if there was evidence from which the trier of fact could find each element of the offense proved beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Id.* This court also must defer to the finder of fact in resolving conflicting evidence and by accepting credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

As charged here, first degree robbery is committed when a person robs another while displaying "what appears to be a firearm or other deadly weapon." RCW 9A.56.200(1)(a)(ii). In turn, robbery occurs when one "takes personal property from the person of another." RCW 9A.56.190. Mr. Lee argues that there was no evidence that he took the $12 from Esteban Salazar and, hence, he was not guilty of first degree robbery.

Contrary to his argument, both Salazars testified that the $12 was given to Lee at gunpoint. The elements of robbery are satisfied and, thus, the evidence supported the verdict. The failure of the police to recover the $12 was a fact that could be considered

4

by the jury in assessing the credibility of the victims—as Mr. Lee argues—but it was not a fact that requires overturning of the jury's verdict. It was equally likely, if not more so, that Mr. Lee discarded the money while he was trying to get away. Since the testimony established that first degree robbery was committed, the evidence supported the verdict.

Mr. Lee next argues that the evidence does not support finding that the gun recovered at the scene was his. Again, the jury resolved this credibility issue against Mr. Lee and this court does not get to reweigh that evidence. Both victims testified that Mr. Lee brought and displayed the gun while demanding money; his DNA was the primary DNA on the gun's handle. Ample evidence supported the unlawful possession of a firearm verdict.

Lastly, Mr. Lee argues for the same reasons that the two weapons enhancements were not proved. For the same reasons noted above, the evidence supported both special verdicts. There was no error.

The evidence supported the jury's verdicts.

*Severance*

The appeal next argues that trial counsel was ineffective for not seeking to sever the unlawful possession charge from the robbery charges. Because the three offenses were based on the same evidence, requiring joinder, counsel did not err.

Once again, well settled standards govern review of this issue. Effectiveness of counsel is judged by the two pronged standard of *Strickland v. Washington*, 466 U.S. 668,

104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). That test requires the criminal defendant to show that (1) counsel's performance failed to meet a standard of reasonableness, and (2) actual prejudice resulted from counsel's failures. *Id*. at 690-692. If a defendant fails to establish one prong, the other need not be addressed. *Id*. at 697. Effective assistance in the plea bargain context is judged by whether the attorney "actually and substantially assisted his client in deciding whether to plead guilty." *State v. Cameron*, 30 Wn. App. 229, 232, 633 P.2d 901 (1981). There is a strong presumption counsel was competent. *State v. Jamison*, 105 Wn. App. 572, 590, 20 P.3d 1010 (2001).

To prevail on an ineffective assistance claim based on failure to move to sever counts, the defendant must show deficient performance by counsel and demonstrate prejudice by showing both that the motion would likely have been granted and a reasonable probability that the outcome of the proceeding would have been different had the motion been granted. *State v. Sutherby*, 165 Wn.2d 870, 884, 204 P.3d 916 (2009). In determining whether severance is appropriate, a court considers (1) the strength of evidence on each count, (2) the clarity of the defenses on each count, (3) the court's instructions to consider each charge separately, and (4) the admissibility of the evidence of one charge in a separate trial of the other charge. *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994).

Joinder is proper under CrR 4.3(a) when two offenses are of the same character or are based on connected acts. When, as here, the offenses arise from the same conduct,

joinder is mandatory. CrR 4.3.1(b). The decision whether to sever charges is reviewed

for abuse of discretion. *State v. Kalakosky*, 121 Wn.2d 525, 536, 852 P.2d 1064 (1993).

Discretion is abused when it is exercised on untenable grounds or for untenable reasons.

*State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Mr. Lee cannot establish that the court would have granted a motion to sever. The

same evidence—the two Salazars testifying that Mr. Lee pulled the gun on them and

pointed it at each—supported both the two robbery counts as well as the unlawful

possession charge. The defenses to the charges were clear and the same—the gun was

not Lee's. The trial court did instruct the jury to consider each charge separately.

Finally, the prior conviction element of the unlawful possession charge was stipulated to

by the parties, so the jury did not see evidence of the prior convictions that disqualified

Mr. Lee from possessing a gun. That is the only piece of evidence that might not have

been admissible in a separate trial, and it was minimized so that there was little

possibility of prejudice on any of the counts.

The *Russell* factors do not suggest that the trial court would have granted

severance of these charges since they arose from the same evidence. Accordingly, Mr.

Lee cannot establish either that his trial counsel erred in failing to seek a severance or that

he was unduly prejudiced by the joint trial. For both reasons, he has not established that

his counsel provided ineffective assistance.

7

*Offender Score Calculation*

Mr. Lee next argues that the trial court erred by treating the two robbery

convictions as separate criminal offenses and that the related firearm enhancements

should not have been applied. The existence of separate victims on the two counts

disposes of his arguments.

At issue initially is RCW 9.94A.589(1)(a). When imposing sentence under that

subsection, courts are required to include each other current offense in the offender score

unless one or more of those offenses constitute the same criminal conduct, in which case

they shall be "counted as one crime." The statute then defines that particular exception to

the scoring rule: "'Same criminal conduct,' as used in this subsection, means two or

more crimes that require the same criminal intent, are committed at the same time and

place, and involve the same victim." *Id*.

It is the defendant's burden to establish that offenses constitute the same criminal

conduct. *State v. Graciano*, 176 Wn.2d 531, 540-541, 295 P.3d 219 (2013). We review

the trial court's ruling on this issue for abuse of discretion. *Id*. at 541. Because Esteban

Salazar was the victim of the robbery count and Roger Salazar was the victim of the

attempted robbery count, the two offenses were separate crimes for scoring purposes.

Mr. Lee also argues that the two offenses were based on the same conduct and,

therefore, double jeopardy principles are violated by punishing both crimes. There was

no double jeopardy violation. The short answer, again, is that offenses involving

different victims do not violate double jeopardy. *See State v. Baldwin*, 150 Wn.2d 448, 457, 78 P.3d 1005 (2003). For that reason, Mr. Lee's derivative argument that both firearm enhancements cannot apply also fails.

The robbery of one person and the attempted robbery of another constitute separate offenses for criminal scoring and for double jeopardy purposes. The trial court did not err by imposing separate sentences, including the firearm enhancement, for each offense.

*Statement of Additional Grounds*

The SAG argues that Mr. Lee's constitutional speedy trial right was violated. He fails to make the required showing of prejudice.

A criminal defendant has a constitutional right to a speedy trial guaranteed by both the Sixth Amendment to the United States Constitution and article I, § 22 of the Washington Constitution. The rights provided by the two constitutions are equivalent. *State v. Iniguez*, 167 Wn.2d 273, 290, 217 P.3d 768 (2009). We review de novo an allegation that these rights have been violated. *Id.* at 280. Because some delay is both necessary and inevitable, the appellant bears the burden of demonstrating that the delay between the initial accusation and the trial was unreasonable, creating a "presumptively prejudicial" delay. *Id.* at 283. Once this showing is made, courts must consider several nonexclusive factors in order to determine whether the appellant's constitutional speedy trial rights were violated. *Id.* These factors include the length and reason for the delay,

whether the defendant has asserted his right, and the ways in which the delay caused prejudice. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). None of the *Barker* factors are either sufficient or necessary to demonstrate a constitutional violation. *Iniguez*, 167 Wn.2d at 283.

Mr. Lee makes the initial showing that there was sufficient delay to trigger a *Barker* analysis. *Id.* at 291-292 (eight month delay sufficient to raise claim). However, he provides no analysis of the *Barker* factors and, in particular, makes no showing that his defense was prejudiced at trial because of the delay. Accordingly, his speedy trial argument fails.

The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Pennell, A.C.J.

Siddoway, J.

10